IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

MATTHEW BORGMAN and NANCY BORGMAN,

                Plaintiffs,

vs.

YAMAHA MOTOR CORPORATION, USA,

                Defendant.

No. 3:19-cv-0285-HRH

# O R D E R

### Motion to Dismiss for Lack of Personal Jurisdiction

Defendant moves to dismiss this action.[1] This motion is opposed.[2] Oral argument was requested but is not deemed necessary.

### Background

Plaintiffs are Matthew and Nancy Borgman. Defendant is Yamaha Motor Corporation, USA.

---

[1] Docket No. 9.

[2] Docket No. 23.

Plaintiffs allege that they are residents of Alaska.[3] Plaintiffs allege that defendant is a California corporation.[4]

Plaintiffs allege that they "purchased a 2018 Yamaha boat model number RP1800A-TAP, #US-YAMC0369H718 ('Boat') from [d]efendant through one of [d]efendant's authorized dealers."[5] The Boat was purchased by plaintiffs in Washington state and then transported to Alaska by plaintiffs.

Plaintiffs allege that "[t]he warranty provided that the Boat was 'free from defects in material and workmanship. . . .'"[6] The warranty provides that "[d]uring the period of warranty, any authorized Yamaha Boat dealer will, free of charge, repair or replace, at Yamaha's option, any parts adjudged defective by Yamaha due to faulty workmanship or material from the factory."[7] The warranty further provides that "[t]he owner of the boat shall give notice to an authorized Yamaha Boat dealer of any and all apparent defects within ten (10) days of discovery. . . ."[8]

---

[3]First Amended Complaint at 2, ¶¶ 1-2, Docket No. 8.

[4]Id. at 2, ¶ 3.

[5]Id. at 3, ¶ 7.

[6]Id. at 3, ¶ 9.

[7]Limited Warranty, Exhibit B at 1, Motion to Dismiss for Lack of Personal Jurisdiction over Yamaha Motor Corporation, USA, Docket No. 9.

[8]Id.

Plaintiffs allege that "[t]he Boat did not conform to the warranty."[9] More specifically, Matthew Borgman ("Borgman") avers that "[t]he boat would not get on step/plane pulling a tube, even with full throttle."[10] He avers that plaintiffs "discovered the back well filled up with water" and that "[i]t appeared water was leaking from the clean-out plug."[11]

Plaintiffs allege that "[d]efendant, through its Agent [Anchorage Yamaha, Inc.], attempted to conform the Boat to the warranty at its Agent's repair facility in Anchorage, Alaska."[12] However, plaintiffs allege that "the Boat is still unavailable for use because [d]efendant has failed to make the necessary repairs."[13]

In their first amended complaint, plaintiffs assert two Unfair Trade Practices Act claims against defendant.

Defendant now moves to dismiss plaintiffs' first amended complaint on the ground that the court lacks personal jurisdiction over it.

## Discussion

"Where [a] defendant[] move[s] to dismiss a complaint for lack of personal jurisdiction, [the] plaintiffs bear the burden of demonstrating that jurisdiction is appropriate."

---

[9]First Amended Complaint at 3, ¶ 10, Docket No. 8.

[10]Declaration of Matthew Borgman at 2, ¶ 5, Docket No. 25.

[11]Id.

[12]First Amended Complaint at 3, ¶ 13, Docket No. 8.

[13]Id. at 4, ¶ 21.

Dole Food Co., Inc. v. Watts, 303 F.3d 1104, 1108 (9th Cir. 2002). If "the motion is based on written materials rather than an evidentiary hearing, 'the plaintiff need only make a prima facie showing of jurisdictional facts.'" Id. (quoting Sher v. Johnson, 911 F.2d 1357, 1361 (9th Cir. 1990)). "In determining whether [a plaintiff has] met this prima facie burden, uncontroverted allegations in [the] complaint must be taken as true, and 'conflicts between the facts contained in the parties' affidavits must be resolved in [the plaintiff's] favor. . . .'" Ochoa v. J.B. Martin and Sons Farms, Inc., 287 F.3d 1182, 1187 (9th Cir. 2002) (quoting Am. Tel. & Tel. Co. v. Compagnie Bruxelles Lambert, 94 F.3d 586, 588 (9th Cir. 1996)). "Additionally, any evidentiary materials submitted on the motion 'are construed in the light most favorable to the plaintiff and all doubts are resolved in [the plaintiff's] favor.'" Id. (quoting Metro. Life Ins. Co. v. Neaves, 912 F.2d 1062, 1064 n.1 (9th Cir. 1990)).

"Where, as here, there is no applicable federal statute governing personal jurisdiction, the district court applies the law of the state in which the district court sits." Dole Food Co., 303 F.3d at 1110. Alaska's long-arm statute reaches "to the maximum extent permitted by the due process clause of the Fourteenth Amendment[.]" Alaska Telecom, Inc. v. Schafer, 888 P.2d 1296, 1299 (Alaska 1995).

Plaintiffs "contend that [defendant] is subject to specific jurisdiction in Alaska."[14] The court

---

[14]Plaintiffs' Opposition to Defendant's Motion to Dismiss for Lack of Personal Jurisdiction at 8, Docket No. 23.

-4-

> employ[s] a three-part test to assess whether a defendant has sufficient contacts with the forum state to be subject to specific personal jurisdiction:
>
> (1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;
>
> (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and
>
> (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

Picot v. Weston, 780 F.3d 1206, 1211 (9th Cir. 2015) (citation omitted). "The plaintiff[s have] the burden of proving the first two prongs." Id. If they prove the first two prongs, "the burden shifts to the defendant to 'set forth a compelling case that the exercise of jurisdiction would not be reasonable.'" Id. (quoting CollegeSource, Inc. v. AcademyOne, Inc., 653 F.3d 1066, 1076 (9th Cir. 2011)).

As to the first prong of the specific jurisdiction test, the parties agree that the purposeful availment analysis applies. "The 'purposeful availment' analysis asks 'whether a defendant has purposefully availed himself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.'" IPSL, LLC v. College of Mount Saint Vincent, 383 F. Supp. 3d 1128, 1136 (D. Or. 2019) (quoting Picot, 780 F.3d at 1212). "The '[p]urposeful availment analysis examines whether the defendant's contacts with the forum are attributable to his own actions or are solely the actions of the

plaintiff.'" Id. (quoting Sinatra v. Nat'l Enquirer, Inc., 854 F.2d 1191, 1195 (9th Cir. 1988)). "'In order to have purposefully availed oneself of conducting activities in the forum, the defendant must have performed some type of affirmative conduct which allows or promotes the transaction of business with the forum state.'" Id. (quoting Sinatra, 854 F.2d at 1195). "'A showing that a defendant purposefully availed himself of the privilege of doing business in a forum state typically consists of evidence of the defendant's actions in the forum, such as executing or performing a contract there.'" Id. (quoting Schwarzenegger v. Fred Martin Motor Co., 374 F.3d 797, 802 (9th Cir. 2004)). "For purposes of personal jurisdiction, the actions of an agent are attributable to the principal." Sher, 911 F.2d at 1362.[15]

"The purposeful availment standard requires more than foreseeability of causing injury in another state." Terracom v. Valley Nat'l Bank, 49 F.3d 555, 560 (9th Cir. 1995). "Rather, 'the foreseeability that is critical to [the] due process analysis . . . is that the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there.'" Id. (quoting World–Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980)). "The purposeful availment prong prevents defendants

---

[15]Defendant criticized plaintiffs' reliance on Theo. H. Davies & Co. v. Republic of Marshall Islands, 174 F.3d 969, 974 (9th Cir. 1998), for this proposition because it involved a statutory jurisdictional question. And, although the Ninth Circuit has observed that there is some doubt after Daimler AG v. Bauman, 571 U.S. 117, 121 (2014), as to "whether an agency relationship might justify the exercise of specific jurisdiction," the Ninth Circuit has not so held. Williams v. Yamaha Motor Co., 851 F.3d 1015, 1023-24 (9th Cir. 2017).

from being haled into a jurisdiction through 'random,' 'fortuitous,' or 'attenuated' contacts." Id. (quoting Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475 (1985)).

Defendant argues that it has no contacts with Alaska and that it has done nothing to purposefully avail itself of conducting activities within Alaska. Mike Van Wagenen, defendant's "National Sales Manager, Watercraft" avers that defendant has no "authorized Yamaha Boat dealer[s] in Alaska," "has no Yamaha Boat repair facility in Alaska," "has not paid for any work performed on" plaintiffs' Boat, and "does not have an agent for Yamaha Boats in Alaska[.]"[16] Although defendant has "26 authorized dealers" in Alaska, these dealers sell products other than boats and Van Wagenen avers that defendant "does not advertise Yamaha Boats for sale in Alaska."[17] Defendant acknowledges that it "maintains a Yamaha Boat website" but Van Wagenen avers that the website only allows "viewers to learn about Yamaha Boat products, and where to find an authorized Yamaha Boat dealer" and that "[a] party cannot purchase a boat through [defendant's] Yamaha Boat website."[18] Because it does not have an authorized dealer or repair facility in Alaska, defendant argues that it could not reasonably anticipate being haled into court in Alaska over a warranty issue concerning a boat that was purchased in Washington state and then transported to Alaska by

---

[16]Declaration of Mike Van Wagenen [etc.] at 1-3, ¶¶ 1, 10, 12, 20, 25, 28, Docket No. 10. Van Wagenen avers that "[t]he last authorized Yamaha Boat dealer in Alaska closed in 2013." Id. at 2, ¶ 10.

[17]Id. at 2, ¶¶ 8-9.

[18]Id. at 2, ¶¶ 13-14, 16.

plaintiffs. Defendant argues that the only reason there is any connection here to Alaska is that plaintiffs unilaterally decided to bring the Boat to Alaska.

Plaintiffs disagree. First, plaintiffs argue that defendant, through its agent Anchorage Yamaha, has many contacts with Alaska. Clayton Meehan, Nancy Borgman's son, avers that prior to plaintiffs purchasing the Boat, he "called Anchorage Yamaha" and was told that Anchorage Yamaha "did not keep any Yamaha boats in stock, but that Anchorage Yamaha, Inc. could order one for us" and "that Anchorage Yamaha, Inc. was authorized to do warranty repairs on Yamaha boats."[19] Meehan avers that after plaintiffs discovered the water leak, he called Anchorage Yamaha and was told that Anchorage Yamaha "would do the warranty repairs."[20] Borgman avers that he took the Boat to Anchorage Yamaha for the repairs and that on August 21, 2018, he "received a call from Anchorage Yamaha, Inc. informing me the boat was fixed."[21] Borgman further avers that when he picked the Boat up that day, he "was told that Yamaha Motor Corp., USA, . . . assisted in the diagnosis and repairs and supplied the replacement part."[22] The service record for this repair shows that Anchorage Yamaha replaced the man hole cover assembly after "call[ing] Yama tech" and

---

[19]Declaration of Clayton Meehan at 2, ¶ 5, Docket No. 24.

[20]Id. at 2-3, ¶ 8.

[21]Matthew Borgman Declaration at 2, ¶ 7, Docket No. 25.

[22]Id.

there is note that "Yama tech said to call them back if man hole does not fix problem."[23] The service record indicates that there was no charge for this repair.[24]

Borgman avers, however, that the initial repair was not successful and that plaintiffs took the Boat back to Anchorage Yamaha in October 2018.[25] Borgman avers that Andrew Smith, "Vice President & Chief Operating Officer of Anchorage Yamaha," told him at that time that defendant "was aware of the unrepaired water leak and that [defendant] was going to extend the warranty on the boat. . . ."[26] Borgman avers that Anchorage Yamaha was not able to work on the Boat prior to winter and thus plaintiffs were asked to pick the Boat up and bring it back in the spring of 2019 for repairs.[27] Borgman avers that he took the Boat

---

[23]Exhibit 1 at 1, Plaintiffs' Opposition to Defendant's Motion to Dismiss for Lack of Personal Jurisdiction, Docket No. 23. Plaintiffs contend that defendant has interfered with their ability to obtain other service records from Anchorage Yamaha, Inc. Plaintiffs served two subpoenas on Anchorage Yamaha and defendant moved to quash the subpoenas. Docket No. 16. The court has stayed the two subpoenas. Docket No. 19.

[24]Exhibit 1 at 1, Plaintiffs' Opposition to Defendant's Motion to Dismiss for Lack of Personal Jurisdiction, Docket No. 23. Defendant contends, however, that it "did not provide free parts for [plaintiffs'] boat to Anchorage Yamaha." Declaration of Joe Maniscalco [etc.] at 5, ¶ 39, Docket No. 28.

[25]Matthew Borgman Declaration at 3, ¶¶ 8-9, Docket No. 25.

[26]Id. at 3, ¶ 9. Smith, however, avers that he did not tell Borgman "that [defendant] was going to extend his warranty." Declaration of Andrew Smith [etc.] at 2, ¶ 13, Docket No. 29.

[27]Matthew Borgman Declaration at 4, ¶ 12, Docket No. 25.

back to Anchorage Yamaha, Inc. in April 2019 "to get the water leak repaired."[28]  Borgman avers that "[o]n June 21, 2019, I spoke to Andrew Thomas ('Thomas'), who I believe was the Regional District Manager for" defendant and that Thomas told him that "he was getting involved in helping get my boat repaired. . . ."[29]  Borgman avers that Thomas contacted him again on June 26, 2019 and told him that defendant's "technical support was working with Anchorage Yamaha, Inc. to diagnosis and repair the boat. . . ."[30]  Borgman avers that on July 8, 2019, he called Thomas "and told him I wanted [defendant] to buy back the boat because it was still not fixed.  Thomas said he was going to discuss the repairs with Anchorage Yamaha, Inc."[31]  Borgman avers that in July 2019, he also called the Washington state dealer from whom plaintiffs had purchased the Boat and was told "that 'higher up' people at [defendant] were assisting in fixing the boat."[32]

Plaintiffs argue that the foregoing contacts are sufficient to show that defendant purposefully availed itself of doing business in Alaska such that it could have reasonably anticipated being haled into court in Alaska.  Plaintiffs argue that it is of no import if

---

[28] Id. at 4, ¶ 14.

[29] Id. at 5, ¶ 17.  Defendant contends that Thomas is "a customer relations representative based in Georgia" and "the person a customer speaks with if they call [defendant's] customer service line."  Maniscalco Declaration at 5, ¶ 31, Docket No. 28.

[30] Matthew Borgman Declaration at 5, ¶ 18, Docket No. 25.

[31] Id. at 5, ¶ 21.

[32] Id. at 5, ¶ 22.

-10-

Anchorage Yamaha is not a Yamaha Boat dealer. Plaintiffs acknowledge that the warranty provides that the Boat must be taken to a Yamaha Boat dealer for warranty repairs, but plaintiffs argue that defendant waived this requirement because defendant authorized Anchorage Yamaha to perform warranty service on the Boat. In sum, plaintiffs argue that the undisputed facts show that an out-of-state manufacturer used an in-state agent to repair its product and that under such a fact scenario, there can be no doubt that the court has personal jurisdiction over the out-of-state manufacturer.

Defendant argues that there are a number of problems with plaintiffs' argument that it has sufficient contacts with Alaska. First, defendant argues that because Anchorage Yamaha is not an authorized Yamaha Boat dealer, it is not authorized to do warranty repair on Yamaha boats. And if Anchorage Yamaha was not authorized to do warranty work on the Boat, then defendant argues that none of Anchorage Yamaha's actions had anything to do with defendant's contacts with Alaska. In support of its contention that Anchorage Yamaha is not an authorized Yamaha Boat dealer, defendant offers the declaration of Joe Maniscalco, the Marine Service Division Manager for defendant, who avers that "Anchorage Yamaha ceased being an authorized Yamaha Boat dealer in 2009 when Anchorage Yamaha requested to terminate the Yamaha Boat product addendum[.]"[33] Defendant also offers the declaration of Andrew Smith, the "Vice-President, Chief Operating Officer, and co-owner of Anchorage Yamaha," who avers that "Anchorage Yamaha, Inc. is not an authorized

---

[33]Maniscalco Declaration at 1, ¶ 1; 3, ¶ 17, Docket No. 28.

Yamaha Boat Dealer" and that "Anchorage Yamaha employees do not tell possible consumers that Anchorage Yamaha is authorized to do Yamaha Boat warranty work."[34] Maniscalco avers that "[w]hen a business ceases being an authorized dealer of a Yamaha product line, the business is no longer authorized to . . . do warranty repair for that product line."[35] Smith also avers that "Anchorage Yamaha does not do warranty work for Yamaha Boats."[36] Defendant acknowledges that Meehan and Borgman both aver that they were told by Anchorage Yamaha that it could to warranty repair work on the Boat, but defendant argues that these averments are inadmissible hearsay because they were not statements made by an employee or agent of defendant. Defendant insists, that despite plaintiffs' allegations and assertions to the contrary, Anchorage Yamaha is not its agent.

Defendant points out that Anchorage Yamaha has a dealership agreement with defendant.[37] "'The relationship between automobile manufacturers and their dealers has been examined by a host of courts throughout the country, all of which have agreed that dealers are not "agents" of manufacturers[.]'" Herremans v. BMW of N. Amer., LLC, Case No. CV 14–02363 MMM (PJWx), 2014 WL 5017843, at *6 (C.D. Cal. Oct. 3, 2014) (quoting Connor

---

[34]Smith Declaration at 1-2, ¶¶ 1, 4, 10, Docket No. 29.

[35]Maniscalco Declaration at 3, ¶ 18, Docket No. 28. Maniscalco avers that a "Yamaha dealer is like any other repair shop. It can independently choose to repair any product. It is their choice to charge for repair services." Id. at 4, ¶ 22.

[36]Smith Declaration at 2, ¶ 9, Docket No. 29.

[37]Exhibit A, Reply to Motion to Dismiss for Lack of Personal Jurisdiction, Docket No. 27.

v. Ford Motor Co., No. 96 C 8343, 1997 WL 724528,*2 (N.D. Ill. Nov.12, 1997)). Defendant argues there is no reason that the same rule should not apply here because like a car dealer, who purchases cars from a manufacturer and resells them to consumers, "Anchorage Yamaha purchases products from [defendant] and then resells the products."[38] Defendant "does not participate in the dealer-consumer price negotiations, nor does it dictate terms and conditions of sale or payment between Anchorage Yamaha and [the] buyer."[39] And, defendant contends it does not own Anchorage Yamaha, "does not share in the profits or losses realized from the operation of Anchorage Yamaha[,]" and "has no control over the hiring, firing, and supervision of Anchorage Yamaha employees."[40] Defendant also points out that Anchorage Yamaha's dealer agreement provides that "[t]his Agreement does not in any way create the relationship of principal and agent between Dealer and Yamaha and in no circumstances shall Dealer, its agents or employees be considered the agent of Yamaha."[41] Defendant acknowledges that the dealer agreement is "'not controlling,'" but argues that the court can consider the agreement when determining whether an agency relationship exists. Williams v. Yamaha Motor Co., Case No. CV 13-05066 BRO (VBKx), 2015 U.S. Dist.

---

[38]Maniscalco Declaration at 2, ¶ 9, Docket No. 28.

[39]Id. at 2, ¶ 12.

[40]Id. at 2, ¶¶ 4, 6, 13.

[41]Yamaha Dealer Agreement, Exhibit A at 6, Reply to Motion to Dismiss for Lack of Personal Jurisdiction, Docket No. 27.

LEXIS 192825, *16 (C.D. Cal. Jan. 7, 2015) (quoting Arnson v. General Motors Corp., 377 F. Supp. 209, 213 (N.D. Ohio 1974)).

"An agency is created by the actions of two parties. The agent manifests a willingness to act subject to the principal's control, and the principal expresses consent for the agent to so act." Costco Wholesale Corp. v. World Wide Licensing Corp., 898 P.2d 347, 352 (Wash. Ct. App. 1995); see also, Harris v. Keys, 948 P.2d 460, 464 (Alaska 1997) (citation omitted) ("[u]nder Alaska law, an agency relation exists only if there has been a manifestation of the principal to the agent that the agent may act on his account and consent by the agent so to act"). "Agents may be general or special." Costco Wholesale, 898 P.2d at 352. "'A general agent is an agent authorized to conduct a series of transactions involving a continuity of service.'" Id. (quoting Restatement (Second) of Agency § 3(1) (1958)). "'A special agent is an agent authorized to conduct a single transaction or a series of transactions not involving continuity of service.'" Id. (quoting Restatement (Second) of Agency § 3(2)).

While defendant has established that Anchorage Yamaha is not its general agent, it is possible that Anchorage Yamaha was a special agent. Viewing the evidence currently before the court in the light most favorable to plaintiffs, it is possible that defendant authorized Anchorage Yamaha to make the warranty repairs on the Boat. Granted, this evidence is primarily Meehan's and Borgman's averments, which defendant contends are hearsay, but those averments are only hearsay if Anchorage Yamaha is not defendant's agent. And, Meehan's and Borgman's averments are not the only evidence. There is also the

August 2018 repair invoice. This invoice expressly states the replacement of the man hole cover was a "warrenty [sic]" repair,[42] which suggests that Anchorage Yamaha was doing warranty repair work on plaintiffs' Boat. A reasonable inference that can be drawn from the repair invoice is that Anchorage Yamaha was doing warranty work and that it did this repair free of charge because defendant had agreed that it could do such work.

In sum, there are doubts as to whether Anchorage Yamaha could be considered a specific agent of defendant. And, if there are doubts created by the evidence, those doubts have to be resolved in plaintiffs' favor, which means that, for purposes of the instant motion, Anchorage Yamaha would be considered a specific agent of defendant's such that Anchorage Yamaha's conduct as it relates to the Boat could be imputed to defendant. There can be no dispute that Anchorage Yamaha engaged in affirmative conduct that allowed or promoted the transaction of business in Alaska. Thus, if Anchorage Yamaha is defendant's agent, then defendant has sufficient contacts with Alaska, and plaintiffs have met their burden as to prong one of the specific jurisdiction test.

"The second prong of the specific jurisdiction test is met if 'but for' the contacts between the defendant and the forum state, the cause of action would not have arisen." Terracom, 49 F.3d at 561. Plaintiffs have met this prong. Plaintiffs' causes of action would

---

[42]Exhibit 1 at 1, Plaintiffs' Opposition to Defendant's Motion to Dismiss for Lack of Personal Jurisdiction, Docket No. 23.

not have arisen but for Anchorage Yamaha's contacts with Alaska, contacts which, for now, can be imputed to defendant.

If plaintiffs have "made a prima facie case that the assertion of specific jurisdiction over the defendant is constitutional," which plaintiffs have, "the burden shifts to [defendant] to present a compelling case that the exercise of jurisdiction would be unreasonable and therefore violate due process." CollegeSource, Inc., 653 F.3d at 1079) (citation omitted). "In determining whether the exercise of jurisdiction comports with fair play and substantial justice," the court considers seven factors:

> (1) the extent of the defendants' purposeful injection into the forum state's affairs; (2) the burden on the defendant of defending in the forum; (3) the extent of conflict with the sovereignty of the defendant's state; (4) the forum state's interest in adjudicating the dispute; (5) the most efficient judicial resolution of the controversy; (6) the importance of the forum to the plaintiff's interest in convenient and effective relief; and (7) the existence of an alternative forum.

Dole Food Co., 303 F.3d at 1114 (citation omitted).

<u>extent of defendant's purposeful injection</u>. This factor weighs slightly in defendant's favor because the extent of defendant's injection, as it relates to this case, was fairly limited.

<u>burden on defendant in defending in Alaska</u>. This factor weighs slightly in defendant's favor as there would be some burden on defendant if this case is litigated in Alaska.

sovereignty. Defendant concedes that this factor weighs in plaintiffs' favor.[43]

forum state's interest. Because Alaska has some interest in this case, this factor weighs slightly in plaintiffs' favor.

efficient judicial resolution. This factor is neutral because some of the witnesses and evidence are located in Alaska, but some of the witnesses and evidence are located outside of Alaska.

importance of forum to plaintiffs' interest. Plaintiffs argue that this factor weighs in their favor because it would be extremely inconvenient for them to litigate this case in California. Plaintiffs contend that they would have to travel to California, retain California counsel, transport the Boat to California, and pay to have Alaska witnesses travel to California. However, as defendant points out, in the Ninth Circuit, "the plaintiff's convenience is not of paramount importance." Dole Food Co., 303 F.3d at 1116. And, as defendant points out, plaintiffs traveled several thousand miles to buy the Boat in the first place. Thus, this factor is neutral.

alternative forum. There are two other possible forums, Washington state (were the Boat was purchased) and California (where defendant is headquartered). Thus, this factor weighs in defendant's favor.

In sum, the factors are relatively even; three weigh in defendant's favor; two or maybe three weigh in plaintiffs' favor; and two are neutral. When the factors are "essentially a

---

[43]Reply to Motion to Dismiss for Lack of Personal Jurisdiction at 19, Docket No. 27.

wash," the Ninth Circuit has held that the defendant has failed to prove that the "exercise of jurisdiction would not comport with fair play and substantial justice." Harris Rutsky & Co. Ins. Services, Inc. v. Bell & Clements Ltd., 328 F.3d 1122, 1134 (9th Cir. 2003).

Conclusion

Defendant's motion for a hearing[44] is denied.

Because the court is deciding the jurisdictional issue on the basis of written materials, which means that any disputes are resolved in plaintiffs' favor, defendant's motion to dismiss[45] is denied. However, the court is only concluding that plaintiffs have made a prima facie case of personal jurisdiction. Defendant can "continue to challenge personal jurisdiction either at a pretrial evidentiary hearing or at trial itself." Marlyn Nutraceuticals, Inc. v. Improvita Health Products, 663 F. Supp. 2d 841, 848 (D. Ariz. 2009) (citing Metropolitan Life Ins. Co. v. Neaves, 912 F.2d 1062, 1064, n.1 (9th Cir. 1990)).

DATED at Anchorage, Alaska, this 4th day of February, 2020.

/s/ H. Russel Holland
United States District Judge

---

[44]Docket No. 20.

[45]Docket No. 9.